RAMÓN RIVAS SEPÚLVEDA, ETC., ET AL., Plaintiffs and Appellees, v. CONCEPCIÓN VELÁZQUEZ, ETC., ET AL., Defendants and Appellants.

No. R-66-158.        Decided December 16, 1969.

*Faustino R. Aponte* for appellants. *Julio C. Rivera, Luz E. S. Virella,* and *Eduardo E. Ortiz Quiñones* for appellees.

PER CURIAM: Ramón Rivas Sepúlveda and his sons Víctor, Benedicto, José, and Benigno, filed a claim against Concepción Velázquez and Heirs of Nicasio Betancourt for (1) unpaid wages for hours worked by them in appellants' dairy in excess of eight hours per day and 48 hours per week; (2) the difference between the wages prescribed by law and those paid to appellees; (3) accrued unpaid vacations for the years 1955 to 1961; and (4) the allowance for wrongful discharge.

The evidence consisted in appellees' testimony, that of a brother-in-law, and three other witnesses, that of Mrs. Velázquez, who kept the payroll books of the dairy, and that of Ismael Betancourt, manager of appellants' dairy. The payroll books of the dairy were offered and admitted as documentary evidence without objection. Said evidence was conflicting.

The trial court concluded that:

1.—Ramón Rivas Sepúlveda sold his house in Yabucoa where he lived in 1955 and then moved to appellants' farm,

where he worked as milker; doing cleaning jobs, cutting and transporting grass for cattle feed, doing truck gardening and other activities.

2.—In February 1958 said appellee moved to a house near the dairy stable. Thereafter he worked exclusively in dairy tasks together with his sons Víctor and Benedicto.

3.—During the years 1955, 1956, and 1957, this appellee worked 7 days weekly, 2 hours daily in dairy jobs. During the year 1958 Ramón Rivas Sepúlveda worked in the dairy from 4:00 a.m. to 4:00 p.m., except for one-hour lunch period. From 1958 to October 15, 1961 he worked an average of 11 hours every Sunday without receiving extra pay.

4.—Since from May 1955 to October 15, 1961 said appellee always received wages per hour in excess of the legal rate fixed by Mandatory Decrees Nos. 18 and 27, he is not entitled to compensation for difference in wages. During said period he worked 7,419 extra hours which were not paid to him at least at double the legal rate. During the period from May 1955 to December 31, 1956, he worked 1,220 extra hours not compensated at the legal rate of 28¢ per hour. On that account he is entitled to the amount of $341.60. From January 1957 to December 1959 he worked 730 extra hours not compensated at the rate of $2.50 which was the wage rate he was earning. On that account he is entitled to the amount of $226.30.

Ramón Rivas Sepúlveda was not paid for 95 days of vacation leave accrued from January 1955 to October 1961. He is entitled to compensation for 73½ vacation days from May 1955 to April 8, 1960 at the rate of 22¢ per hour after deducting the amount received for vacation. From April 9, 1960 to October 15, 1961, he accumulated 21½ vacation days which must be paid to him at the rate of 37¢ per hour after deducting the amount received for vacations.

Ramón Rivas Sepúlveda is entitled to receive for extra hours worked and accumulated vacations not paid the total amount of $4,954.62.[1]

5.—Víctor Rivas worked as gardener for the Betancourt family until August 1959 when he started to work in the dairy from 4:00 a.m. to 4:00 p.m. except for one-hour lunch break, 7 days a week. He is entitled to receive the amount of $2,211.20 for extra hours and for accumulated unpaid vacations.

6.—Benedicto Rivas started to work in the dairy in February 1958. His workday was as long as Víctor's. During the second half of the year 1959 and during the year 1960 he did not work in the dairy, but he did work as gardener, except for 3 hours daily which he worked milking the cows, work which was not compensated at the rate established by law, since he was only paid $5.00 a week. He is entitled to receive $1,526.14 for differences in wages, extra hours, and accumulated unpaid vacations.

7.—Neither José nor Benigno Rivas Delgado worked in the dairy.

8.—Appellees abandoned the work without being discharged by appellants.

Appellants allege that the trial court erred (1) in failing to give credit to the employer's payrolls; (2) in determining the date on which Ramón Rivas Sepúlveda started to work in the dairy; (3) in computing said appellee's extra hours; (4) in determining the time Víctor Rivas worked in the dairy; and (5) in determining that Benedicto Rivas worked in the dairy.

---

[1] There does not appear from the conclusions of the trial court the complete arithmetic computation to justify this result. It is imperative that the trial courts be more precise in their conclusions in cases like this, stating in detail the grounds and the computations of (a) any differential in unpaid wages when it is concluded that wages lower than the legal rate were paid; (b) of the unpaid extra hours and the exact mathematical computation to obtain the total amount owed.

In *Rosario* v. *Land Authority*, 97 P.R.R. 316 (1969) and in *Campos Encarnación* v. *Sepúlveda*, 94 P.R.R. 72, 78 (1967) we summarized the rules for weighing the evidence in cases like the one at bar.

1–2–3. We consider the first three assignments jointly because they refer to Ramón Rivas Sepúlveda's claim.

The trial court concluded that "the information appearing from said payrolls is not entirely credible." It gives as an example the testimony of Mrs. Velázquez, who prepared said payrolls, that "she caused claimant Víctor Rivas Delgado to appear therein as working only 6 hours by reason that . . . he was too young to work the full 8-hour workday. Such naive explanation lacks merit."

The payrolls in question were admitted in evidence without objection. They were not challenged. There does not appear from the record any reason whatsoever to exclude Ramón Rivas Sepúlveda from the payrolls until the end of July 1956, since there appeared from the same the names of some forty other workers. There is no indication whatsoever in the evidence to explain said omission. Therefore, we conclude that actually Ramón Rivas Sepúlveda started to work on the Betancourts' farm on July 4, 1956 when he appears for the first time on appellants' payrolls.

The trial judge concluded that from 1955 to February 1958 said appellee worked in dairy tasks and other works for 11 hours daily, 7 days weekly, from 4:00 a.m. to 4:00 p.m. This conclusion was based on appellee's own testimony. The payrolls show that when he started to work on said farm in July 1956 he worked in truck gardening and in the pasture, partly as part owner, as the trial court concluded, being entitled to free housing. Extra hours were not paid to him. He does not appear working in the dairy until February 1, 1958 and since then he was given credit for 8 hours daily during 6 days weekly, and 4 extra hours in the seventh day. He was paid at the rate of $2.50 daily during February 1958. In

March of that year his weekly wages were raised to $18 and $33 were paid for vacations. Said wages were increased to $23 weekly on August 1, 1959. From the 1959 payrolls there appears that from October 3, Ramón Rivas Sepúlveda's wages were reduced to $18 weekly; that on September 12 his son Víctor passed to the dairy and "suspended, Benito passed to domestic." Rivas' schedule remained the same. He was paid $46 for vacation leave for that year. The 1960 payroll states that he "was authorized to work not over 8 hours daily." To that the 1960 payroll adds "8 only on Sundays" and "double time when he works them." He was paid at the rate of 35¢ per hour and 40¢ per hour for the 4 hours credited to him for Sunday. And so the entries corresponding to Rivas Sepúlveda continued until October 7, 1961 when he quit.

From the foregoing we conclude:

(a). Ramón Rivas Sepúlveda did not start to work on the Betancourts' farm in 1955 but in July 1956. It was not until February 1, 1958 that he started to work in the dairy. Before, he worked in truck farming and in the pasture. Rivas himself testified that he passed to the dairy on this date, together with his sons, when the workers who worked there quit. His testimony that he worked in the dairy since 1955, at least from 4:00 to 6:00 a.m., is not credible because (1) the payrolls do not show it; (2) these workers performed the dairy work; (3) until February 1958 Rivas lived in a house on the farm, far from the dairy, more in harmony with the farming work.

(b) So that it is reasonable to infer that until February 1, 1958 he did not work extra hours since the agricultural work did not require it and they do not appear credited in the payrolls, while, from said date on, extra hours were credited for the work performed on Sundays.

(c) We agree with the trial court that Rivas' tasks in the dairy, due to its nature and the necessity to milk the cows in the early morning, started every day at 4:00 a.m.

and continued until 4:00 p.m. Rivas testified that he took the hour from 11 to 12 for lunch. Ismael Betancourt testified that the work in the dairy started at 4:00 a.m.; that the milking of the cows terminated at 6:00 a.m., and then they "did cleaning jobs, cut grass, and filled the feeders for the calves." At 9:00 a.m. "they had a recess." Since the production of about 120 quarts of milk in the morning was involved, according to Rivas, Ismael Betancourt's testimony to the effect that from 20 to 25 cows were milked in the morning and 15 in the afternoon, is credible. Therefore, taking into consideration what appears from the payrolls and the aforesaid testimony of the parties, we must conclude that in the dairy in question 5 hours were worked in the morning from 4:00 to 9:00, and 4 hours in the afternoon, from 12:00 to 4:00, that is to say, Rivas worked *one extra hour daily not credited in the payrolls.* As to Sundays, Rivas testified that he worked the same number of hours as in the other days. So that *on Sundays he worked 9 hours which, because they were extra hours, should be paid at double rate. Since they paid him 8 hours for the work performed on that day at the regular wage rate, they owe him 8 hours at the regular rate and one hour at double rate for every Sunday since February 1, 1958 until he stopped work on October 7, 1961.* Of course, for the purpose of computing the amount owed to him for overtime, the period that he did not work due to illness and during which he was substituted by his eldest son, who received the corresponding compensation for his services, shall not be taken into consideration.

(d) Since Rivas did not work in the dairy until 1958 he is entitled to vacation starting this year. We agree with the trial judge that *he is entitled to vacations accumulated during the year 1961, this being the only vacations owed to him.*

4. Now let us examine the claim of Víctor Rivas Delgado, who was a youth 18 years old in 1958. He testified that he

started to work in the dairy in August 1959. As the trial court concluded, previously he had worked exclusively as gardener. The payroll shows that he started to work in the dairy on September 12, 1959. Since there is no reason for having omitted him from the payroll for one month when in the same there appear numerous other workers, we conclude that the second date indicated as the starting date for his work in the dairy is more credible. We agree that he worked the same hours as his father. This appears not only from his own testimony but also from that of Ismael Betancourt. In this respect the payrolls do not show the truth in failing to credit him any hours of work at the beginning and later on, only 6 hours of work per day. *He is entitled, therefore, to pay for one hour daily at double rate during all the time he worked in the dairy. For work performed on Sundays he is entitled to wages corresponding to the hours worked at double rate, minus the amount received as wages for the hours credited in the payrolls for the work performed on Sundays. He was entitled to vacations in 1959 since he accumulated more than 120 hours worked in the dairy during every one of the last 3 months of said year. Those of 1960 were paid to him, but not those of 1961.*

5. Appellee Benedicto Rivas, 16 years old in 1958, does not appear in appellants'· payrolls, except that on Ramón Rivas Sepúlveda's page on the payroll for October 3, 1959 there appears a note which states: "From September 12—· Víctor dairy discharged Benito passed to domestic." With respect to this note the testimony of Ismael Betancourt and that of Concepción Velázquez was the following:

Ismael Betancourt testified, in relation to the aforementioned note, that "Discharged, Benito passed to domestic. Víctor was the one discharged."

Mrs. Velázquez testified that in effect the note in question meant "that Víctor was discharged from domestic services

and Benedicto substituted him. Then Víctor started to work in the dairy with his father."

As they had previously testified that Benedicto had never worked in the dairy but that he had worked in domestic services, the preceding explanation is that on September 12, 1959, Víctor who up to this time had worked in domestic services, was discharged from that employment, being substituted by Benedicto, and that then Víctor passed to work in the dairy, as it appears from the payrolls.

On the contrary, Ramón Rivas Sepúlveda testified that when the last two of the three cowkeepers of the dairy stopped work he was moved with his family to a house near the stable to do the dairy work "together with his sons." Víctor testified that he worked together with his father the same hours the latter did in the tasks of the dairy together with his brothers, since he started to work there.

The record reveals and it was thus affirmed by the trial court, that before September 1959 Víctor worked exclusively as gardener and that it was in September 1959 that he started to work in the dairy. Benedicto testified that he started to work in the dairy with his father in 1958, the same hours the latter did, with weekly wages of $5.00; that in 1959 "I was not working in the dairy either . . . I cannot remember when we were transferred to work in the garden" he continued to earn $5.00 weekly. He testified that in the year 1960 he worked "with them in the garden." Then he says that during the years 1958, 1959, and 1960 he "worked" Sundays in the dairy; that during the year 1960 he worked every day from 4:00 to 7:00 a.m. in the dairy, then in the garden until 11:00, and from 12:00 to 1:00 p.m. again in the dairy, and then he went back to the garden. In 1961 he says he worked "Still in the garden." Later on he testified that he did not remember having worked during said year from 4:00 to 7:00 a.m. and from 12:00 to 1:00 p.m. in the

dairy. The cross-examination on this particular was as follows:

"Q. Witness, must I understand that from the time you started to work in 1958 until you quit or you were discharged, until you stopped work, you were working in both things, in the dairy and in the garden?

WITNESS:

A.—Yes, sir.

Q.—Then you always worked in the garden?

A.—No, because I worked in the dairy.

Q.—In both things?

A.—Yes, in both things.

Q.—Did you work some hours in the morning in the dairy and then you went to work in the garden?

A.—From 7:00 to 11:00.

Q.—And in the afternoon?

A.—I was in the dairy from 12:00 to 1:00.

Q.—And after that?

A.—I went to the garden again.

Q.—Was that during all the years?

A.—No, because I worked a little more than a year in the dairy only.

Q.—In what year was that?

A.—In '58.

Q.—Then in '58 you worked only in the dairy?

A.—Yes, sir.

Q.—Then, you did not work in the garden?

A.—No, not in '58."

We conclude from the foregoing that *Benedicto Rivas* did not perform a complete working day in the dairy in question. However, the trial court was justified in concluding that while he worked as gardener, since September 1959, *he worked 3 hours daily during 7 days each week in the dairy which were not paid to him at the rate established by law for which reason he is entitled to receive compensation for the difference in wages.* Since he worked from 7:00 to 11:00 a.m. and from 12:00 to 4:00 p.m. during the 7 days a week, *he is entitled*

*to receive pay at double rate for hours worked on Sundays. He was not entitled to vacations* since he worked less than 120 hours monthly in the dairy, as required by the applicable mandatory decrees. We base these conclusions on the following circumstances:

1:—Benedicto Rivas does not appear on the payrolls of appellants' farm. The only reference to this young man is the note appearing in Ramón Rivas' page on the payroll for October 1959 which is vague and confusing. The explanation given by appellees in their testimony seems to us more logical and reasonable in view of the prevailing circumstances at the time, that is, that Víctor Rivas, who worked as gardener, ceased as such and passed to the dairy while Benedicto, then a 16-year-old lad, from that time substituted his brother Víctor in his employment as gardener. It does not seem to us real and practical and, therefore, it does not seem credible, that if Benedicto was already trained in the work of the dairy he would be transferred as gardener and Víctor, who was the gardener, and who presumably knew nothing about the dairy, should substitute Benedicto in his work as milker and cowkeeper.

2.—Benedicto earned wages of $5.00 weekly, obviously very much less than what appellants paid for the work in the dairy. Even more, appellants paid wages over the minimum for work performed in the dairy. This seems to indicate that he was paid $5.00 weekly for domestic services and not for agricultural services. There does not appear any reason whatsoever to pay Benedicto so little for the same work performed by Víctor in the dairy, for which the latter was paid at the rate of 35¢ per hour during the years 1960 and 1961, that is, that while Víctor was paid $16.80 weekly, Benedicto was paid only $5.00 for the same work.

3.—Víctor was two years older than Benedicto. It was reasonable that he started to work in agricultural work be-

fore the latter and the latter started to work in some domestic service first as the former did.

For the reasons set forth we must remand the case to the trial court with instructions to compute again, in the light of the preceding determinations, the wages owed to appellees and by virtue thereof to amend the judgment rendered in this case on May 9, 1966.

Mr. Chief Justice, Mr. Justice Rigau, and Mr. Justice Dávila did not participate herein. Mr. Justice Pérez Pimentel concurs in the result.